A99A1357. GALINDO v. LANIER WORLDWIDE, INC.
(526 SE2d 141)

POPE, Presiding Judge.

Alexis Galindo, d/b/a Law Offices of A. Galindo, appeals the decision of the Superior Court of DeKalb County confirming an arbitration award in favor of Lanier Worldwide, Inc. Galindo's primary argument is that the arbitrator exceeded her authority because he never agreed to arbitrate in the first place. Galindo also raises several procedural issues that are interrelated with this question. We conclude that the trial court used the wrong standard to review the arbitrator's decision finding that there was an agreement between the parties, and therefore we remand the case to the DeKalb Superior Court.

Lanier alleged that the "Law Office of A. Galindo" of Downey, California ("Law Office") entered into two agreements to lease copier equipment and that the agreements included an arbitration clause

---

and an agreement to arbitrate in "Atlanta, Georgia."[1] Lanier filed a petition with the American Arbitration Association ("AAA") claiming that the Law Office breached the leases. Galindo responded on behalf of the Law Office, denied that there was an agreement between the parties, and suggested that an unauthorized person signed the agreements and that Lanier had already recovered from another company.

A hearing was held in Atlanta, but Galindo did not attend. Two days later, Galindo sent the arbitrator a letter and three affidavits. In his letter, the full body of which is quoted here, Galindo disputed the entire arbitration clause:

> The Law Office of A. Galindo contends that the Lanier lease agreement was never authorized by Alexis Galindo, the owner. The Lanier agreement requires that any dispute be resolved by way of arbitration. Since the Respondent disputes the validity of the lease agreement the entire arbitration clause is in dispute. However, *should AAA wish to proceed* and render a decision then I must ask that the attached declarations be admitted into evidence.

(Emphasis supplied.) In his attached affidavit, Galindo swore that his Law Office had never entered into the agreements or agreed to purchase any equipment and that he did not sign the agreements. In the other two affidavits, third parties stated that a different company located at the same address as Galindo's Law Office had entered into the copier lease agreements with Lanier and that they knew where the copiers were.

Shortly thereafter, the arbitrator entered an award entitled "Ex Parte Award of Arbitrator." The arbitrator began the award by saying, "having duly heard the proofs and allegations of [Lanier] and Law Office of A. Galindo having failed to appear after due notice by mail. . . ." She awarded Lanier all requested damages.

Lanier then filed a petition in DeKalb Superior Court to confirm the award. Galindo answered, raised several defenses, including lack of personal jurisdiction, and moved the court to either dismiss the case or vacate the arbitration award. The court held a hearing and eventually entered an order confirming the arbitrator's award, awarding attorney fees in Lanier's favor, and substituting Galindo as

---

[1] The arbitration provision in the lease agreement provided:
Any controversy or claim arising out of or relating to this Agreement or the breach hereof . . . shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect on the date of this Agreement, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. . . .

the proper party in place of his trade name.

1. *Standard of Review.* The trial court found that the transaction at issue involved interstate commerce and that therefore the arbitration was governed by the Federal Arbitration Act ("FAA"), 9 USC § 1 et seq. Galindo does not challenge this ruling, and therefore we will apply the federal substantive law of arbitrability to the agreement. *Hilton Constr. Co. v. Martin Mechanical Contractors*, 251 Ga. 701, 703 (308 SE2d 830) (1983), following *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 24 (103 SC 927, 74 LE2d 765) (1983). And under that body of law, an appellate court reviewing a lower court's decision confirming an arbitration award should accept findings of fact that are not "clearly erroneous" but decide questions of law de novo. *First Options of Chicago v. Kaplan*, 514 U. S. 938, 947-948 (III) (115 SC 1920, 131 LE2d 985) (1995).

2. *Motion to Dismiss.* Before reaching the validity of the arbitrator's award, we must first address several procedural grounds which Galindo argues compelled the dismissal of Lanier's confirmation action.

(a) *Service of Process.* Galindo first challenges service of process in the superior court action. He raised this defense in his answer and motion to dismiss. Lanier filed the petition on January 14, 1998, and Galindo received a copy via regular mail. On February 3, a deputy sheriff of Los Angeles County, California, served a secretary at Galindo's office who claimed she was authorized to accept process on behalf of "Law Office of A. Galindo" and routinely had done so. It is this service that Galindo challenges. But on June 24, Galindo was served personally, and he has not challenged this service on appeal. Therefore the issue is abandoned. Court of Appeals Rule 27 (c) (2).

(b) *Personal Jurisdiction.* Galindo contends that DeKalb Superior Court did not have personal jurisdiction over him. He does not challenge subject matter jurisdiction of the DeKalb court. We note that state courts have subject matter jurisdiction over confirmation of arbitration awards. *Hilton Constr. Co.*, 251 Ga. at 702-703.

> Jurisdiction of the person is the power of a court to render a personal judgment, or to subject the parties in a particular case to the decisions and rulings made by it in such a case, and is obtained by appearance or by serving the proper process in the manner required by law on persons or parties subject to be sued in a particular action.

(Citations and punctuation omitted.) *Williams v. Fuller*, 244 Ga. 846, 849 (3) (262 SE2d 135) (1979). The Georgia Long Arm Statute provides in part: "A court of this state may exercise personal jurisdiction over any nonresident . . . if in person or through an agent, he[]

transacts any business within this state. . . ." OCGA § 9-10-91. "[T]he policy of our Long Arm Statute is to exercise jurisdiction over nonresident defendants to the maximum extent permitted by procedural due process." (Citation omitted.) *Bradlee Mgmt. Svcs. v. Cassells*, 249 Ga. 614, 617 (292 SE2d 717) (1982).

For the purposes of the Long Arm Statute, someone transacts business within the state,

> if the nonresident has purposefully done some act or consummated some transaction in this state, if the cause of action arises from or is connected with such act or transaction, and if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Davis Metals v. Allen*, 230 Ga. 623, 625 (198 SE2d 285) (1973). Thus, we must examine Galindo's actions vis-a-vis Georgia.

There are only three actions allegedly taken by Galindo that could confer personal jurisdiction: (i) mailing a response to the notice of arbitration and a letter to the arbitrator in Georgia, (ii) allegedly agreeing to arbitrate before a Georgia arbitrator even though he disputed that he entered into the agreements, and (iii) allegedly entering into agreements that contained a Georgia choice of forum and arbitration clause.

It is well settled under Georgia law that Galindo's actions in mailing a response to the arbitration notice and a letter to the arbitrator, standing alone, are not sufficient to confer personal jurisdiction. See *ETS Payphone v. TK Indus.*, 236 Ga. App. 713, 715 (1) (513 SE2d 257) (1999) and cases cited therein ("an out-of-state defendant will not be deemed to have engaged in purposeful business activity in this state on the basis of telephone or mail contact").

We turn therefore to a consideration of whether the DeKalb court has personal jurisdiction over Galindo as a result of the arbitration agreements themselves or as a result of Galindo's alleged agreement to arbitrate the issue of whether he ever entered into an arbitration agreement in the first place.

The agreements specify that the parties agreed to arbitrate any disputes in Atlanta. And, under the FAA, a confirmation hearing on an arbitration award is held in the district or jurisdiction where the arbitration was held.[2] 9 USC § 9. If Galindo entered into the agree-

---

[2] Galindo also contends that even if he agreed to arbitrate in Atlanta, venue is not proper in DeKalb Superior Court because the FAA provides that the confirmation award must be held in the appropriate federal district court. But, whether the matter may be brought in state versus federal court is a question of subject matter jurisdiction, and state

ments, then he consented to arbitrate in Atlanta, and he further consented to personal jurisdiction in a state or federal court in the same district reviewing the arbitrator's decision. See 9 USC § 9; see also *Weststar Assoc. v. Tin Metals Co.*, 752 F2d 5, 7 (1st Cir. 1985) (Section 9 enables court for the district within which the award was made to exercise personal jurisdiction over the parties to the award). If Galindo never entered into the leases, then the DeKalb court had personal jurisdiction only if Galindo waived objection to it. OCGA § 15-1-2 (a party may waive personal jurisdiction). Based on the facts of this case, he waived personal jurisdiction only if he agreed to allow the arbitrator to decide whether he entered into the leases in the first place.

In awarding Lanier damages, the arbitrator necessarily decided the arbitration issues in favor of Lanier, i.e., (1) Galindo agreed to allow the arbitrator to decide whether he entered into arbitration agreements, and (2) Galindo entered into the arbitration agreements. Reviewing the arbitrator's decision under these circumstances requires application of a special standard of review.

As explained by the U. S. Supreme Court, the answer of who was authorized to decide the question of arbitrability determines what standard of review applies to the arbitrator's decision about arbitrability. *First Options*, 514 U. S. at 942-945 (II). If the parties agreed that the arbitrator should decide the issue, the reviewing court "should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." Id. at 943. If the parties did not agree that the arbitrator should decide arbitrability, then the reviewing court should address the matter independently. Id.

The answer to the "who" question depends on the intent of the parties. As stated by the Supreme Court,

> Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question who has the primary power to decide arbitrability turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration?

(Citations and punctuation omitted.) *First Options,* 514 U. S. at 943 (II). The Court then explained that ordinary state law principles governing the formation of contracts should be applied when resolving

---

courts have subject matter jurisdiction to confirm awards. *Hilton Constr. Co.*, 251 Ga. at 702-703. Venue is a different question, and Galindo has not shown that the arbitration did not occur in that part of Atlanta located in DeKalb County.

the issue, with one important qualification: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (Citations and punctuation omitted.) Id. at 944 (II); see also *North Augusta Assoc. v. 1815 Exchange,* 220 Ga. App. 790, 793 (2) (469 SE2d 759) (1996). Any silence or ambiguity on this narrow issue should not be construed in favor of arbitration because "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options,* 514 U. S. at 945 (II). Thus, for this issue the normal presumption in favor of arbitration is reversed. Id. at 944-945 (II). Applying the normal presumption "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." (Citations omitted.) Id. at 945 (II).

Here, it cannot be said that Galindo clearly and unmistakably agreed to submit the issue of arbitrability to the arbitrator. First, he consistently denied entering into the contract that included the arbitration clause. His letter could be read as an assertion that the arbitrator did not have authority and as a reservation of his rights. He did not attend the arbitration hearing. Galindo's letter and actions are consistent with the conclusion that he thought he could not stop the arbitration from proceeding but knew he needed to object.

In *First Options*, the Kaplans, who claimed to have never agreed to arbitration, appeared at the arbitration hearing and submitted a written memorandum objecting to the arbitrators' jurisdiction. The Supreme Court held that, under the circumstances of that case, appearing and arguing that the arbitrator did not have authority were not the same as agreeing to be bound by the decision: "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point." *First Options,* 514 U. S. at 946 (II). The high court noted that the Kaplans could have used other means to get a court decision on the question without arguing the point to the arbitrators, "e.g., by trying to enjoin the arbitration, or by refusing to participate . . . and then defending against a court petition . . . to compel arbitration." Id. But nevertheless, this "simply does not say anything about whether the Kaplans intended to be bound by the arbitrators' decision." Id.

The DeKalb court applied the presumption in favor of arbitration. Because we conclude that Galindo did not submit the issue of whether he agreed to arbitrate to the arbitrator, we find that the trial court should have performed a de novo review of whether Galindo, through his Law Office, entered into the lease agreements with Lanier. And under *First Options*, the trial court must apply state law principles of contract formation. *First Options*, 514 U. S. at

944 (II). We remand the case for this purpose. If the court determines that Galindo did enter into the agreements, then personal jurisdiction and venue were proper in the DeKalb court under the parties' agreement, the arbitration clause, and the FAA. See 9 USC § 9; see also *Weststar Assoc.*, 752 F2d at 7. If he did not enter into the lease agreements, then the trial court's confirmation order should be vacated and the confirmation action dismissed for lack of personal jurisdiction.

While we express no opinion on the answer to this question, we will address issues that may occur on remand should the court uphold the lease agreements and determine that it has jurisdiction.

3. *Improper Party.* Galindo contends the trial court erred when it granted Lanier's motion to change the name of the defendant from "Law Office of A. Galindo" to Alexis Galindo because the arbitration award is only against the "Law Office of A. Galindo."

Lanier sought arbitration of a dispute arising under two copier lease agreements. The agreements list the purchaser as "Law Office of A. Galindo." Galindo admits that this was a trade name for his sole proprietorship, i.e., his law practice in California. The use of a trade name does not create a separate legal entity, and "[i]f one undertakes an obligation in a fictitious or trade name, the obligation is his own individually." (Citations and punctuation omitted.) *American Express &c. Co. v. Berlye*, 202 Ga. App. 358, 360 (1) (414 SE2d 499) (1991). Therefore, if "Law Office of A. Galindo" entered into the contract, Galindo would be the responsible party.

4. *Motion to Vacate.* The FAA provides that a motion to vacate an award "must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 USC § 12. And, the appellant may not simply wait and raise the same defenses in response to a motion to confirm the award. *Cullen v. Paine, Webber &c.*, 863 F2d 851, 854 (II) (A) (11th Cir. 1989); *Professional Administrators, Ltd. v. Kopper-Glo Fuel*, 819 F2d 639, 642 (6th Cir. 1987); compare *MCI Telecommunications Corp. v. Exalon Indus.*, 138 F3d 426, 430 (1st Cir. 1998) (a person who has not been a party to the arbitration is not bound by section 12 from arguing that there was no agreement to arbitrate). Therefore, if Galindo's Law Office entered into the lease agreements, he was subject to section 12 of the FAA, and his motion to vacate was properly denied.

. In summary, the superior court should not have given deference to the arbitrator's decision that there was a contract between the parties. We reverse and remand for a de novo review of that question and further proceedings consistent with this opinion. Lanier's motion for damages for a frivolous appeal is denied.

*Judgment reversed and remanded. Smith and Eldridge, JJ., concur.*

DECIDED NOVEMBER 23, 1999.

*Lamar, Archer & Cofrin, David W. Davenport, Richard W. Feeley,* for appellant.

*Altman, Kritzer & Levick, Joseph D. Wargo, Jeanine L. Gibbs,* for appellee.